# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| FRED SAMUEL BLAKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No.: 3:08-CV-00070-WCL |
| | ) |
| UNIVERSITY OF NOTRE DAME DU LAC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OF OPINION AND ORDER

This matter is before the court on the motion for summary judgment filed by the defendant, University of Notre Dame Du Lac. ("Notre Dame") on January 20, 2009. The plaintiff, Fred Samuel Blake ("Blake"), who is proceeding *pro se*, has failed to file any response in opposition to the motion.[1] Therefore, the motion is ripe for resolution. For the reasons discussed in this Order, the motion for summary judgment is GRANTED.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby,*

---

[1] Notre Dame served Blake with a notice pursuant to *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), informing him of the filing of the motion for summary judgment and his right to respond. Docket at 33. Blake has failed to file such a response or any other pleading.

*Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.,* 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex,* 477 U.S. at 322; *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003). A failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325. A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary

judgment. *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir. 1999); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993).

The summary judgment standard is applied rigorously in employment discrimination cases because intent and credibility are such critical issues and direct evidence is rarely available. *Seener v. Northcentral Technical Coll.,* 113 F.3d 750, 757 (7th Cir. 1997); *Wohl v. Spectrum Mfg., Inc.,* 94 F.3d 353, 354 (7th Cir. 1996). To that end, the court carefully reviews affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination. However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts. *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir. 1997).

In addition to this summary judgment standard, the court must be mindful of the fact that Blake is proceeding *pro se*. The standard employed by the courts when examining *pro se* pleadings was explained recently in *Fields v. Roswarski*, 2008 WL 150657 *1 (N.D. Ind., January 11, 2008):

> When reviewing *pro se* complaints, a court must employ standards less stringent than if the complaint had been drafted by counsel. *Haines v. Kerner,* 404 U.S. 519 (1972). A court must accept the well-pleaded factual allegations as true, and "construe such allegations in favor of the plaintiff." *Roots Partnership v.. Lands' End, Inc.,* 965 F.2d 1411, 1416 (7th Cir. 1992). Although ambiguities in the complaint should be interpreted in the plaintiff's favor, *Canedy v. Boardman,* 16 F.3d 183, 188 (7th Cir. 1994), a court need not strain to find inferences favorable to the plaintiff which are not apparent on the face of the complaint, *Coates v. Illinois State Bd. of Educ.,* 559 F.2d 445, 447 (7th Cir. 1977), or ignore factual allegations set forth in the complaint that undermine the plaintiff's claim. *City Nat'l Bank of Florida v. Checkers, Simon & Rosner,* 32 F.3d 277, 281 (7th Cir. 1994).

Accordingly, Blake's claims, and Notre Dame's motion for summary judgment on those claims, must be considered in light of these standards.

## DISCUSSION

Blake initiated this lawsuit by filing a Complaint, *pro se*, on February 11, 2008. Docket at 1. With leave of court, Blake filed an Amended Complaint on August 12, 2008. Docket at 20. According to his Complaint, Blake was an employee at Notre Dame in Notre Dame, Indiana at the time of the events giving rise to his claims. In his Amended Complaint, Blake alleges that Notre Dame discriminated against him in violation of the Vietnam Era Veterans' Readjustment Assistance Act of 1974 ("VEVRAA"); Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); the Age Discrimination in Employment Act ("ADEA"); the Americans with Disabilities Act ("ADA"); and the Rehabilitation Act.[2] *Id*., pp. 1-2. In the body of his complaint, Blake also includes allegations of discrimination pursuant to the Family and Medical Leave Act ("FMLA"), even though the FMLA is not listed in the "laundry list" of claims that appear on the first two pages of the Amended Complaint. *Id*., pp. 2-5. In any event, the court will address each of Blake's claims.

Blake was hired as a Research and Sponsored Programs Accounting ("RSPA") Administrator in the Controller's Office on April 25, 1994. Def.'s Mem. [DE 32], p. 3. Notre Dame explains that RSPA assists faculty members with accounting for grants and contracts awarded to the University. *Id*., p. 4. Blake was assigned a number of faculty members for whom he would track expenditures related to grant and contract money awarded. *Id*. However,

---

[2] "The Rehabilitation Act [29 U.S.C. § 794], which applies to programs receiving federal assistance, also requires employers to accommodate qualified individuals with a disability and incorporates the standards of the ADA." *King v. City of Madison*, 550 F.3d 598, 599 (7th Cir. 2008). For purposes of legal analysis, the two statutes are essentially merged. *Id*.

according to Notre Dame, Blake received feedback from a review in 1999, indicating that he needed improvement in his judgment and decision making and job knowledge. *Id*. In addition, it was noted in the review that Blake struggled with basic job responsibilities, insufficient focus, as well as accuracy and timeliness issues in filing financial reports and journal entries. *Id*., pp. 4 and 5. In response, Blake admitted problems with reporting and accuracy troubles. *Id*., p. 5; Blake Dep. [DE 32, Exhibit A] at p. 82. Performance reviews from 2000 and 2001 again noted a persistent lack of timeliness and accuracy of workmanship. Def.'s Mem., p. 5. Blake noted the grave consequences of such failures, recognizing that failure to "get reports out" in a timely manner could cause a professor to lose grant or contract awards. *Id*.; Def.'s Mem., p. 103. Blake's 2002 and 2003 reviews also indicated that improvement was needed in Blake's communication skills. Def.'s Mem., p.6. Also, the 2003 review indicated trouble with accuracy and thoroughness in establishing new accounts. *Id*., pp. 6 and 7.

Notre Dame indicates that additional problems with Blake's performance arose as the University went live on July 1, 2004 with a new financial accounting and reporting system ("Banner"), following a 16-month implementing and training period. *Id*., p. 7. In conjunction with the implementation of Banner, it was noted that Blake lacked understanding concerning the new system and did not seek out additional training which was available. *Id*. However, additional problems surfaced when Blake's supervisor, Ann Strasser ("Strasser"), received unsolicited e-mails from professors and Department Chairs assigned to Blake regarding concerns including encumbrances, timeliness and accuracy issues. *Id*. In 2004, Blake's annual review, based on work product and the unsolicited feedback, resulted in an overall performance rating of "Unacceptable." *Id*., p. 8. As a consequence, Blake began a remedial Performance Action Plan

in 2005.  *Id*.  This plan required Blake to meet weekly with Strasser and offered Blake opportunities to discuss any concerns.  *Id*., pp. 8 and 9.

While according to Notre Dame Blake disclosed that he was having "a lot of personal issues," at no time were these issues explained or inquired and Blake did not disclose any disability, service related or otherwise.  *Id*.  When specifically asked to identify his claimed disability at the time of deposition, Blake was unable to identify with particularity, verbally or by offering other evidence, any disability other than stress and speculation that he had experienced a nervous breakdown.  Blake Dep., at p. 207-08.  No diagnosis of depression or disability was made during the term of employment and Notre Dame indicates that Blake did not request accommodations for any alleged disability.  Def.'s Mem., p. 11.  While Blake indicates that he desired an accommodation, he does not clearly state that he requested or disclosed a need for such an accommodation.  *See* Amended Complaint, p. 3.  In addition Blake alleges that he was placed on prescription medication that had eased his ability to maintain focus.  *Id*.

According to Notre Dame, on June 8, 2005 Blake did not arrive for work and applied for and received FMLA leave from June 8, 2005 through July 15, 2005.  Def.'s Mem., p. 11.  The reason given in the Medical Certification form indicated the reason for leave granted under the FMLA leave was acute stress reaction; however, Strasser was never given a copy of the Medical Certification nor did Blake discuss any type of nervous breakdown, but talked in terms of being "stressed out."  *Id*., p. 12.

On August 24, 2005, Strasser issued a Second Performance Action Plan due to the fact that a faculty member requested a different accountant to handle the specified accounts.  *Id*.  It was found that some of the accounts were not current in their billings.  *Id*.  In addition, Notre Dame indicates that faculty members continued to express a lack of confidence in Mr. Blake's

abilities. *Id*. According to Notre Dame, Strasser observed that Blake's work habits did not reflect a sense of urgency to resolve the stated concerns and Blake, himself, admitted this. *Id*., p. 12; Blake Dep., at pp. 227 and 228. Thus, the Second Performance Action Plan indicated that a reevaluation was scheduled to occur on or about September 28, 2005 and Blake was advised that if his performance did not improve, he could be terminated. Def.'s Mem., pp. 12 and 13. Hence, when performance problems continued, Strasser authored a letter of termination on September 30, 2005. *Id*., p. 13. Notre Dame states that this decision was made independently by Strasser, despite the fact that Blake alleges that Thomas Guinan ("Guinan"), Associate Controller, was instrumental in his evaluation. *Id*.; Blake Dep., at p. 241. However, Blake cannot cite any other action taken by Guinan that he claims to be discriminatory. Def.'s Mem., p. 13; Blake Dep., at p. 241.

**Claim Under VEVRAA**

Blake alleges discrimination on the basis of his status as a disabled veteran. Amended Complaint, p. 2. Upon the receipt of this charge, the Office of Federal Contract Compliance Programs ("OFCCP") investigated the veteran's status claim with accompanying disability issues and dismissed the complaint, having determined that insufficient evidence was presented to find that Notre Dame violated its obligations under the nondiscrimination and affirmative action provisions of the VEVRAA or under the nondiscrimination provisions of the Americans with Disability Act of 1990 ("ADA"). Amended Complaint [Doc. 20-3, attachment 3], at p. 5. While Blake is entitled to file a complaint with the Department of Labor– which he has filed– VEVRAA does not provide a private right of action and hence may not serve as the basis of a claim against Notre Dame. *See* 38 U.S.C. §§ 4211-14; *Wikberg v. Reich*, 21 F.3d 188, 189 (7th Cir. 1994). There is no evidence that Blake has a property interest in his job: it is not alleged

that he was anything more than an at-will employee. Hence, it is tenuous to assert that a deprivation of a property right exists on which to form a due process claim. *See id.* at 190; *Board of Regents v. Roth*, 408 U.S. 564, 576-77, 92 S. Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Thus no genuine issue of material fact remains. Therefore, Notre Dame is entitled to summary judgment on Blake's claim under the VEVRAA.

**Claim Under Title VII**

The Plaintiff has alleged discrimination on the basis of Title VII of the Civil Rights Act of 1964. Amended Complaint, p. 1. Blake alleges that his race, African-American, was a motivating factor in his termination from Notre Dame. *Id.* A plaintiff may demonstrate intentional employment discrimination in one of two ways: either by offering direct evidence of employment discrimination or by utilizing the burden-shifting method as illustrated by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93, S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Blake does not satisfy the requirements of the direct method, which would require direct evidence, which, "if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Pair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343 (7th Cir. 1997) quoting *Randle v. LaSalle Telecommunication*, 876 F.2d 563, 569 (7th Cir. 1989). While Blake generally asserts that race was a factor in his termination, a plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. *Albiero,* 246 F.3d 927, 933; *Stagman,* 176 F.3d 986, 995; *Slowiak,* 987 F.2d 1293, 1295. Therefore the direct method has not been satisfied.

In the alternative, the Plaintiff may shift the burden of proof to the Defendant as in *McDonnell* by raising an inference of discrimination after establishing a prima facie case.

Page 8

*McDonnell,* 411 U.S. 792, 802. To establish a prima facie case of employment discrimination on the basis of Title VII and §1981, Blake must show that: (1) he belongs to some protected class, (2) he performed the job satisfactorily, (3) he suffered an adverse employment action, and (4) his employer treated similarly-situated employees outside his classification more favorably. *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132 (7th Cir. 1994).

Notre Dame concedes that Blake belongs to a protected class, thus fulfilling the first prong. Def.'s Mem., p. 18. His termination constituted an adverse employment action under the third prong, *Crady v. Liberty Nat. Bank and Trust Co. of Indiana,* 993 F.2d 132, 136 (7th Cir. 1993), although Notre Dame is correct in noting that negative job performance reviews of Blake do not, in themselves, constitute adverse employment action. *See Sublett v. John Wiley & Sons, Inc*. 463 F.3d 731, 739 (7th Cir. 2006) citing *Haywood v. Lucent Techs.*, 323 F.3d 524, 532 (7th Cir. 2003). However, as the facts have been pled, the two remaining prongs provide insurmountable obstacles for Blake. Concerning the fourth prong, Blake does not assert that other similarly-situated employees outside his classification were treated more favorably. As to the second prong, Blake has not reasonably established that he has performed the job satisfactorily.

A record of problems and concerns relating to Blake's job performance spans from 1999 to his termination in 2005. Def.'s Mem., pp. 4-13. Blake does little to rebut this testimony– save referring to his service as "excellent and honorable." Amended Complaint, p. 3. In fact, Blake conceded that timeliness issues and accuracy problems existed and that such errors could cause a professor to loose grant money and create "havoc." Blake Dep., at pp**.** 82 and 103. These issues, coupled with the fact that faculty members expressed lost confidence in Blake's abilities via unsolicited e-mails, are cited by Notre Dame as proper reasons for termination.

Def.'s Mem., p. 7. Such concerns, while indicative of legitimate expectations, are unnecessary in the context of whether the termination had a proper purpose as the burden to establish the fulfillment of legitimate job expectations nonetheless remains with Blake. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343 (7th Cir. Ill. 1997), citing *Villa v. City of Chicago*, 924 F.2d 629, 631 (7th Cir. 1991) (noting that "pretext analysis is necessary only if a plaintiff has already established a prima facie case, including job performance which satisfies the company's legitimate expectations."). Prongs two and four of the prima facie test as required in *Lenoir* thus remain unmet. *See Lenoir*, 13 F.3d 1130, 1132. Thus, Blake's failure to establish a prima facie case negates the necessity to discuss Notre Dame's rational for terminating him. *Villa*, 924 F.2d 629, 631 citing *Deluca v. Winer Industries, Inc.*, 53 F.3d 793,798 (7th Cir. 1995).

Therefore, Blake neither presents direct evidence of employment discrimination nor does he establish a prima facie case in order to shift his burden of proof. The court has carefully reviewed affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination. However, no facts are presented with particularity to show that Blake has met his burden of proof. Even when the facts presented are examined in a light most favorable to the nonmoving party, Blake cannot survive Notre Dame's motion for summary judgment on his employment discrimination under Title VII as no genuine question of material fact exists. Thus, Notre Dame is entitled to summary judgment on this claim.

**Claim Under the ADA and Rehabilitation Act**

Blake has alleged discrimination in contravention of the requirements set forth in the ADA which prohibits an employer from the unlawfully discharging qualified individuals on the

basis of disability. U.S.C. § 12112(a) (2000); 29 C.F.R. § 1630.4 (2009).[3] In asserting that Notre Dame failed to accommodate his disability, Blake must show that (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed reasonably to accommodate the disability. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cit. 2005). Blake may overcome the present summary judgment motion by either using the direct or indirect method. *Bekker v. Humana Health Plan*, 229 F.3d 662, 670 (7th Cir. 2000).

Under the direct method, the Plaintiff must show through either direct or circumstantial evidence that the employer discriminated against the employee on the basis of his disability. *Id*. This evidence must demonstrate that "the employment decision was motivated by the employer's discriminatory animus." *Id*. (quoting *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000)). Thus to overcome a motion for summary judgment, Blake must present sufficient evidence to allow a rational jury to reasonably conclude that, but for disability, he would not have been discharged. *See Bekker*, 229 F.3d 662, 670.

In examining the direct method, it must first be established that Blake is, in fact, a qualified individual with a disability. In determining disability, ADA examines whether the individual has (1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) whether there is a record of such impairment; (3) or whether the individual is regarded as having such impairment. 42 U.S.C. § 1202(2) (2000); 29 C.F.R.§ 1630.2(g) (2009). However, in addition to demonstrating a disability, Blake must also be a *qualified* individual. *See Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 862 (7th Cir. 2005). In determining qualification, it must be determined whether Blake satisfies the

---

[3] The Rehabilitation Act is essentially a "companion" statute to the ADA and applies to employers who receive federal funds. *See* footnote 2 above.

employer's legitimate selection criterion for the job and is capable of performing the job's "essential functions" with or without reasonable accommodation from an employer. *Id.*

Whether Blake has a disability is questionable. The Plaintiff asserts that he was discriminated against as a result of the FMLA leave that he took toward the end of his employment with Notre Dame. However, the reason for his FMLA leave was indicated to be acute stress reaction; yet, no work limitations or restrictions were recommended by the doctor who completed the corresponding paperwork. Despite the claim that he had difficulty in concentration, a nervous breakdown and stress, he was not diagnosed with depression until after his employment was terminated. Notre Dame is right to assert that while depression is a disability under ADA, general stress is not. *See Johnson v. Boardman Petroleum, Inc*. 923 F. Supp. 1563, 1568 (S.D. Ga. 1996).

Even assuming that Blake had a disability, Blake has not shown that Notre Dame knew of or perceived him to have a disability as is required by the second prong in *Sears*. *See Sears*, 417 F.3d 789, 797. An employer must be aware of an employee's disability before liability may ensue for failure to accommodate a disability. *Bombard v. Fort Wayne Newspapers, Ind.*, 92 F.3d 560, 563 (7th Cir. 1996). To find that Notre Dame was aware of a disability would necessarily and improperly cause this court to strain to find such an inference. *See Coates*, 559 F.2d 445, 447. Thus while Blake may rue the fact that he was not offered accommodations in his complaint, the onus remained with him to show that he requested accommodation. Blake asserts that he attempted contact the Vice-President of Finance to presumably discuss his disability, but was "directed to a subordinate." However, the court cannot ascertain whether the subordinate

was informed due to the lack of clarity set forth in the complaints. Therefore the direct method of showing discrimination has not been met.

Before addressing the indirect method now required to show discrimination based on a failure to accommodate an employee with a disability, the court will address the allegation that discrimination based on a disability was the underlying reason for the discharge of employment. Blake does not allege any evidence—direct or circumstantial— to allow a jury to reasonably conclude that discrimination based on his disability was a factor in his discharge. While "even isolated comments may constitute direct evidence of discrimination" if they are made at the time of discharge or are causally related to the decision to discharge (*Sheehan v. Donlen Corp*.173 F.3d 1039, 1043 (7th Cir. 1999) citing *Kennedy v. Schoenberg, Fisher & Newman, Ltd*., 140 F.3d 716, 723 (7th Cir.1998)), no such comments are alleged by Blake to be written or spoken in the instant case. Blake merely asserts that discrimination existed in vague blanket statements that accuse supervisors of discrimination. However, a plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. *City of Kankakee,* 246 F.3d 927, 933; *Stagman,* 176 F.3d 986, 995; *Slowiak,* 987 F.2d 1293, 1295. Thus Blake has neither shown through direct or circumstantial evidence that the employer discriminated on the basis of his disability. *Bekker*, 229 F.3d 662, 670. Hence, the Plaintiff has also failed to show direct evidence of discriminatory intent as to the decision to terminate Blake's employment.

The indirect method allows a plaintiff to shift the burden of proof, leaving a defendant to rebut the presumption of discrimination. *Bekker*, 229 F.3d 662, 672. This method combats the

reality that few employers are likely to offer "smoking gun remarks." *Bekker*, 229 F.3d 662, 672; *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir.2000). The shifting-burden requirements to create a presumption of intentional discrimination were developed in *McDonnell*. *Pugh v. City Of Attica, Indiana*, 259 F.3d 619. (7th Cir. 2001) (citing *McDonnell*, 411 U.S. 792). Thus, to present the requisite prima facie case showing a discriminatory pretext for discharge, a plaintiff must show that he was: 1) a qualified individual with a disability; 2) that his work met the legitimate expectations of the defendant; 3) that he suffered an adverse employment action; and 4) that he was treated differently than a similarly situated employee. *Morrisey v. Health Care Service Corp.*, No. 02 C 3150, 2004 WL 42369, at *5 (N.D.Ill. Jan 7, 2004) (citing *Pugh,* 259 F.3d at 626).

Even assuming that Blake is a qualified individual with a disability, as is questioned above, he has not demonstrated that his work quality met the legitimate expectations of his employer. *Morrisey*, 2004 WL 42369, at *5. Several performance reviews dating as far back as 1999, indicate ongoing problems with the quality of his work product. While the 2003 review found that Blake was generally meeting expectations, a plaintiff may not ignore the 2004 and 2005 reviews and performance plans which cited timeliness and accuracy concerns**.** *See Leffel v. Valley Financial Services*, 113 F.3d 787, 795 (7th Cir. 1997) (noting that a discharged bank employee may not rely on earlier positive performance reviews while ignoring recent reviews which addressed the concerns which ultimately led to the discharge). In addition, his supervisors received unsolicited e-mail messages from faculty members indicating a lack of trust in Blake's abilities, noting accounting inconsistencies and time-management concerns. Blake acknowledges problems with accuracy and timeliness, noting that the dire consequences of these

problems include the possibility of "nothing but havoc" and may cause faculty to loose research grants. By his own admission, accuracy is a legitimate expectation for Notre Dame to demand and he admitted that he did not meet this legitimate expectation. Blake has therefore failed the second prong in required to shift his burden of proof. *See Morrisey*, No. 02 C 3150, 2004 WL 42369, at *5.

Thus, a vague and cursory assertion that his performance was excellent in the past while failing to rebut the concerns that resulted in his performance is not sufficient to demonstrate that Notre Dame's concerns were a pretextual façade to discrimination. *See id*. Hence, because Blake has not shown that his work quality met the legitimate expectations of his employer, he has failed to establish a prima facie case and thereby shift his burden of proof. Because Blake has failed to establish direct or indirect evidence as to the charges of failure to accommodate or other disability discrimination, Notre Dame is entitled to summary judgment on Blake's claims under the ADA and the Rehabilitation Act.

**Claim Under FMLA**

The FMLA provides qualified employees up to twelve work-weeks of leave during any twelve month period for particular health issues which prevent the employee from performing job-related functions. *See Robey v. Potter*, 2009 WL 113403, at *3 (S.D.Ind. Jan. 9, 2009) (citing 29 U.S.C. § 2612(a)(1)). Thus, "the FMLA prohibits an employer from discharging or otherwise discriminating against an employee for exercising his rights under the FMLA." *Davis v. Olin Corp.*, 2005 WL 3455120 at *5 (S.D. Ill., Dec. 16, 2005) (citing 29 U.S.C. § 2615(a)(2)).

Blake alleges that discrimination occurred on the basis of being discharged sixty-two days after "return[ing] from medical [FMLA] leave due to a serious personal mental health

condition." Blake states the latest act of discrimination occurred on October 21, 2005; yet, he first filed his complaint on August 12, 2008. While the statute of limitations for civil action under the FMLA is two years under ordinary circumstances, if the violation was willful, the statute of limitations will be three years. 29 U.S.C. § 2617(c)(1)-(2). Therefore, Blake must demonstrate a willful violation. *See id.*

While the Seventh Circuit has not expressly addressed what constitutes "willful" (*Poteet v. Potter*, 2005 WL 1115805 at *23 (S.D.Ind., March 28, 2005)), other circuits have held that one must show that the employer "either knew or showed reckless disregard as to whether its conduct was prohibited by the statute." *Id.*, citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132, 108 S.Ct. 1677, 1681 (1988).

When asserting retaliation on the basis of a FMLA claim, the Court will again apply the shifting-burden standard as articulated in *McDonnell* if no direct evidence exists. *See King v. Preferred Technical Group*, 166 F.3d 887, 892 (7th Cir. 1999) (citing *McDonnell*, 411 U.S. 792, 800-06). In the instant case, no direct evidence suggests Notre Dame willfully targeted Blake for utilizing his rights derived from the FLMA. No specific statements or actions concerning the FLMA complaint are alleged: Blake is merely suspicious of the timing. Thus, when alleging a retaliatory discharge under the FMLA, the plaintiff must similarly establish that the employer engaged in intentional discrimination to establish a prima facie case. *Id.* While this court is mindful that the Appellant is *pro se*, given the well-documented and on-going performance issues—which Blake acknowledges and admits— it cannot be inferred that Notre Dame has willfully discharged Blake for exercising his rights under the FMLA. Therefore because no direct evidence exists and Blake is unable to establish the prima facie case required to shift his

burden of proof, a charge alleging discrimination on the basis of exercising rights under the FMLA cannot succeed as a matter of law. Notre Dame is therefore entitled to summary judgment on Blake's FMLA claim.

**Claim Under ADEA**

As for Blake's claim under the ADEA, his Amended Complaint is virtually devoid of even allegations explaining this claim, let alone any offer of evidence. All Blake presents to the court concerning this claim is the statement that he "contends age was also a factor and was considered in management's decision of plaintiff's capacity to learn new computer technology or the banner accounting system required in the performance of RSPA administration duties, as well as, mandatory retirement age (race, disability) for executive." Amended Complaint, p. 4. It is difficult to discern exactly what this sentence means. What is clear, however, is that a plaintiff's conclusory allegation is woefully insufficient to withstand a motion for summary judgment. *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001). Since Blake has apparently chosen not to respond to Notre Dame's motion for summary judgment or otherwise attempt to develop the record to present evidence of his claim, Notre Dame is entitled to summary judgment on the ADEA claim contained in Blake's Amended Complaint.

**Statute of Limitations Regarding Title VII and ADEA Claims**

Even if none of the addressed issues above precluded redress for the Plaintiff's claims, the applicable statute of limitations would still bar several of Blake's claims. Blake received a

Right to Sue Notice on or about September 19, 2006. Amended Complaint, Exhibit 2.[4] That Notice pertained to Blake's EEOC charges under Title VII and the ADEA. *Id*. A civil action on the basis of charges filed with the EEOC must be brought within 90 days after the complainant receives his or her Notice. Americans with Disabilities Act of 1990, § 107(a), 42 U.S.C.A. § 12117(a); Age Discrimination in Employment Act of 1967, § 7(e), 29 U.S.C.A. § 626(e); Civil Rights Act of 1964, § 706(f)(1), as amended, 42 U.S.C.A. § 2000e-5(f)(1). However, Blake did not file his complaint until February 11, 2008, almost a year and a half after receiving the Right to Sue Notice. Thus, the 90-day statute of limitations was long expended. In addition because Blake's employment has been terminated, no argument or facts suggest why an equitable tolling through the continuing-violation doctrine or other means should be permitted to bypass application of the statute of limitations. *See Gibbs v. General Motors Inc.*, 104 F. App'x. 580, (7th Cir. 2004). Consequently, for this reason also, Notre Dame is entitled to summary judgment on Blake's claims under Title VII and the ADEA.

---

[4] Blake was also issued a Notice of Right to Sue on November 8, 2007, which was related solely to his ADA claim. Thus, that claim was timely and not barred by the applicable statute of limitations.

## CONCLUSION

For the reasons discussed in this Order, the motion for summary judgment filed by the defendant, University of Notre Dame Du Lac., is GRANTED.

Date: July 6, 2009

          /s/   William C. Lee
William C. Lee, Judge
United States District Court